UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

THOMAS WALSH, III,

    Plaintiff,

v.                                          CAUSE NO. 3:19-CV-419 DRL-MGG

CITY OF MICHIGAN CITY and OFFICER
CHARLES HENDERSON,

    Defendants.

## OPINION & ORDER

Once Thomas Walsh, an intoxicated and suicidal individual, pulled out a gun and pointed it at Sergeant Kenneth Havlin, Officer Charles Henderson quickly and non-lethally shot the suspect four times. Mr. Walsh later pleaded guilty to unlawfully possessing a firearm as a felon. He sues Officer Henderson and the City of Michigan City for excessive force, battery, and negligence. Officer Henderson and Michigan City request summary judgment. The court grants the motion.

## FACTUAL BACKGROUND

In April 2017, Thomas Walsh's sisters took him to the hospital to receive mental health treatment for alcoholism and depression (ECF 41-1 at 7-8). Because Mr. Walsh was intoxicated and suicidal, the hospital brought a wheelchair, nurse, and Michigan City Police Officer Charles Henderson and Sergeant Kenneth Havlin to assist him out of the truck and into the hospital (ECF 41-2 ¶¶ 5-6, 10; ECF 41-3 ¶¶ 3-4).

Mr. Walsh was sitting on the passenger side (ECF 41-2 ¶ 7). The nurse tried to open the passenger door, but it was locked (ECF 41-2 ¶ 9). Sergeant Havlin asked Mr. Walsh if he could unlock the door, but Mr. Walsh shook his head no (ECF 41-3 ¶ 6). Sergeant Havlin then went to open the passenger's door with the key given to him by Mr. Walsh's sister, but every time he tried unlocking it,

Mr. Walsh would re-lock it (ECF 41-3 ¶ 7). Sergeant Havlin then walked to the driver's side door, and Officer Henderson approached the front passenger side door where Mr. Walsh sat (ECF 41-3 ¶ 8).

At the time, Mr. Walsh was leaning over with his hand under his thigh so that Officer Henderson couldn't see what was in his hand, though he appeared to be searching for something (ECF 41-3 ¶ 9). Officer Henderson then saw the butt of a gun, warned Sergeant Havlin; both officers drew their sidearms (ECF 41-3 ¶¶ 10-12). Officer Henderson saw Mr. Walsh raise the gun up in his right hand and begin rotating it in Sergeant Havlin's direction (ECF 41-3 ¶ 13). When Officer Henderson saw the gun pointed at Sergeant Havlin, he believed Sergeant Havlin's life was in danger, so he fired his gun four times at a downward angle into the window and hitting Mr. Walsh (ECF 41-3 ¶ 14). Mr. Walsh's gun was later found loaded (ECF 41-3 ¶ 15).

Mr. Walsh later pleaded guilty to unlawfully possessing a firearm as a felon (ECF 41-4 (indictment); ECF 41-5 at 16, 33 (guilty plea hearing transcript)). The sentencing court found that "Mr. Walsh pulled a stolen and loaded handgun out of a hamper as hospital personnel approached with a wheelchair. He was agitated and refused to unlock the car door before drawing the gun. Upon seeing the gun, a hospital security officer shot Mr. Walsh four to six times" (ECF 41-7 at 3). The court found that the officers believed he pointed the gun at them (*Id.* at 4).

Mr. Walsh sues Officer Henderson and the City of Michigan City for using excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983 and battery and negligence under Indiana law. He also says he should be awarded punitive damages. The defense's summary judgment motion is ripe for decision.

## STANDARD

The court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could

rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

The United States Constitution and Indiana law protect citizens from police misconduct, not good police work. Mr. Walsh sues Officer Henderson and Michigan City for what he says was unreasonable misconduct; but in fact—on this record—no reasonable juror could conclude it was anything but a sound exercise of authority by law enforcement. The court grants summary judgment on all claims for the following reasons.

Mr. Walsh alleges violations of his constitutional rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, he must show that he was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). He may bring a § 1983 claim only against those

individuals "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002).

Officer Henderson is entitled to summary judgment on Mr. Walsh's excessive force claims. Excessive force claims are governed by the Fourth Amendment's "objective reasonableness" standard, *Graham v. Connor*, 490 U.S. 386, 388 (1989), so the court analyzes the actions of an officer from the perspective of a reasonable officer without the benefit of 20/20 hindsight, *Scott v. Edinburg*, 346 F.3d 752, 756 (7th Cir. 2003) (citing *Graham*, 490 U.S. at 396). The reasonableness inquiry must allow for officers to make "split-second judgments" in tense, uncertain, and rapidly evolving situations. *Graham*, 490 U.S. at 396-97. When an officer believes a suspect's actions place "him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force." *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002). That is what happened here.

Because Mr. Walsh pointed a gun at Sergeant Havlin (later found to be loaded), Officer Henderson reasonably feared for Sergeant Havlin's life. Even Mr. Walsh at his plea hearing, though not fully admitting to Officer Henderson's allegations, conceded that the officers thought he was going to pull a gun on them. *See Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) (guilty plea admissions "bind a party"); *Ocasio v. Turner*, 19 F. Supp.3d 841 (N.D. Ind. 2014) (guilty plea admissions bind a defendant in subsequent proceedings). Officer Henderson responded as any reasonable law enforcement officer would, and unfortunately must, to an unprovoked and imminent threat of deadly force: he used the force reasonably necessary to end the threat.

Because of Officer Henderson's prompt response, he likely saved Sergeant Havlin's life and anyone else whom Mr. Walsh may have struck. Officer Henderson shot at a downward angle. Whether he intended to do so, his efforts left Mr. Walsh alive as well, but the threat of death subdued. Mr. Walsh says in his complaint that he tried to hand over his weapon to law enforcement peacefully, but

4

the court doesn't consider pleadings at summary judgment. *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir. 1991). A plaintiff must come forth with evidence, not allegations. Without evidence that Officer Henderson acted unreasonably, the court grants summary judgment on this claim.

Under the circumstances here, Officer Henderson also has qualified immunity. Qualified immunity protects state officials from civil damages "unless the plaintiff can show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Meadows v. Rockford Hous. Auth.*, 861 F.3d 672, 675 (7th Cir. 2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Mr. Walsh hasn't shown that the right violated was clearly established at the time of the conduct.

In an excessive force case, the plaintiff must be specific and must show that his "right to be free from the particular use of force under the relevant circumstances" was "clearly established." *Abbott v. Sangamon County*, 705 F.3d 706, 725 (7th Cir. 2013) (citing *al-Kidd*, 563 U.S. at 735). Excessive force claims depend "very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (*per curiam*) (quoting *Mullenix v. Luna*, 577 U.S. 7, 309 (2015)). This means that mere general statements that an officer shouldn't use excessive force don't overcome the qualified immunity barrier absent specific law saying the force used clearly violated another's constitutional rights. *Id.* No such legal precedent applies here against Officer Henderson. Indeed, the Supreme Court has held instead that similar uses of such force are protected by qualified immunity.

In *Kisela*, for example, the Supreme Court held that an officer was entitled to qualified immunity when he non-fatally shot an erratic woman four times because she was holding a large knife, took steps toward another individual standing nearby, refused to drop the knife after at least two commands to do so, and the officer had mere seconds to assess the potential danger to the other individual. *Id.* at 1151, 1153. Like the officer in *Kisela*, Officer Henderson made a split-second decision

here to protect the life of another whom he reasonably thought was in imminent danger for his life. Mr. Walsh had already refused law enforcement requests to unlock his door and then locked the door after they unlocked it. He was intoxicated and suicidal. Law enforcement officers (and the nurse) were there naturally to help. Mr. Walsh held a loaded semi-automatic weapon. Officer Henderson's action was necessary to prevent Mr. Walsh from inflicting potentially deadly harm on others. His acts fall well within the limits protected by qualified immunity, so Mr. Walsh's excessive force claim is barred on this ground.

Michigan City is also entitled to summary judgment on Mr. Walsh's *Monell* claim. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978). A municipality cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. *Id.* at 691. To be liable, the complaint must instead "allege that a constitutional deprivation was caused by an official policy or custom." *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (citation omitted). Mr. Walsh hasn't shown that there was a constitutional violation here, nor does he provide any evidence that Michigan City has an official policy or custom that caused any constitutional deprivation. *See Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011) (explaining requirements for municipal liability). The court thus grants Michigan City summary judgment on Mr. Walsh's *Monell* claim.

Though the court could remand Mr. Walsh's remaining state law claims because federal question jurisdiction no longer exists, the court retains these claims because substantial judicial resources have been expended, and it is clear how they will be decided. *See Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997). That the court has expended substantial judicial resources is readily apparent: the case has been pending in this district for almost two years and there are 49 entries on the docket.

Mr. Walsh's claims also clearly fail under state law. First, Officer Henderson is immune from the battery and negligence claims under the Indiana Tort Claims Act (ITCA). The ITCA says a lawsuit

6

"alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against an employee personally." Ind. Code § 34-13-3-5(b); *see Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003) (the ITCA "limits when a plaintiff may sue a governmental employee personally"). When a plaintiff alleges that an employee acted within the scope of his employment, as Mr. Walsh did here (ECF 2 ¶ 3), he is barred from bringing a state law tort claim against the employee unless the governmental entity answers that the employee was acting outside the scope of his employment. *See* Ind. Code §§ 34-13-3-5(b), (c)(2); *Ocasio*, 19 F. Supp.3d at 860-61. Michigan City hasn't so answered, and Mr. Walsh hasn't argued that Officer Henderson acted outside his scope of employment. The court thus grants summary judgment on these claims.

Second, Mr. Walsh's battery claim against Officer Henderson fails as a matter of law. Like the Fourth Amendment standard, Indiana permits a police officer to use "reasonable" force when effectuating an arrest. Ind. Code § 35-41-3-3(b). Indiana's excessive force standard thus "effectively parallels the [Fourth Amendment] standard." *Fidler v. City of Indianapolis*, 428 F. Supp.2d 857, 866 (S.D. Ind. 2006) (Hamilton, J.). The court must grant Officer Henderson's summary judgment motion on this claim because Officer Henderson acted reasonably here. No reasonable juror could say otherwise. Because Officer Henderson acted reasonably, Mr. Walsh's *respondeat superior* state law claim against Michigan City for his conduct necessarily fails. *See Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 525 n.2 (Ind. Ct. App. 2001).

Third, Mr. Walsh's negligence claims fail as a matter of law. As stated earlier, he cannot bring a negligence claim against Officer Henderson because of the ITCA. Though Indiana holds employers vicariously liable for its employees' negligence committed within the scope of employment, *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008), Mr. Walsh hasn't shown that Officer Henderson breached any duty of care the officer owed to him. *See Kramer v. Catholic Charities of Diocese of Fort Wayne-South*

7

*Bend, Inc.*, 32 N.E.3d 227, 231 (Ind. 2015) (listing elements of negligence). Instead, Officer Henderson complied with proper police protocols.

Michigan City and Officer Henderson are also entitled to summary judgment against Mr. Walsh's punitive damages claims. Of course, without an underlying tort claim, there is no basis for punitive damages. In addition, Michigan City, a municipality, is immune from punitive damages under both federal and state law. *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981); Ind. Code § 34-13-3-4(b); *see also Kelley v. City of Michigan City*, 300 F. Supp.2d 682, 689-90 (N.D. Ind. 2004). Punitive damage claims against a public official under federal law are proper only when the defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Mr. Walsh hasn't raised any dispute about this—all of Officer Henderson's acts here were reasonable, and there is no evidence he acted with evil motive or in a reckless or callously indifferent manner. And Indiana state law bars punitive damages for government employees acting within the scope of their employment, *see* Ind. Code § 34-13-4(b), as Officer Henderson was doing here.

Mr. Walsh's two letters responding to the motion do nothing to sway the court's findings here. He incorrectly says Indiana House Bill 1019 was passed requiring law enforcement to wear a body camera and have the camera turned on;[1] but even if he were right that the bill required this, he doesn't show how this is relevant to his claim here. He then says in his response that the gun was under the passenger seat of the truck, not pointed at law enforcement, but his response is an unsworn statement that isn't evidence. *Anderson v. Hardman*, 241 F.3d 544, 545-46 (7th Cir. 2001); *see also Whitfield v. Snyder*, 263 F. Appx. 518, 521 (7th Cir. 2008) ("Although district courts may liberally construe the federal and local rules for pro se litigants, even pro se litigants are obligated to follow those rules."). Even if it

---

[1] The House Bill instead establishes a procedure for the release of law enforcement recordings. *See* https://legiscan.com/IN/bill/HB1019/2016.

was, he cannot now use these unsworn statements that the gun was under the seat to manufacture a dispute at summary judgment because his previous sworn testimony at his guilty plea hearing was that he was sitting on the gun (*see* ECF 41-5 at 30). *See Velez v. City of Chicago*, 442 F.3d 1043, 1049 (7th Cir. 2006). His other letter (ECF 48) seems to request an additional deposition, but the time for discovery has passed. By not raising any additional arguments, even as a *pro se* litigant, he has waived them. *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014).

## CONCLUSION

The court thus GRANTS Officer Charles Henderson's and the City of Michigan City's motion for summary judgment (ECF 41) on all claims. The court DIRECTS the clerk to enter judgment in favor of Officer Henderson and the City of Michigan City. This order terminates the case.

SO ORDERED.

May 10, 2021                                    *s/ Damon R. Leichty*
                                                Judge, United States District Court